**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **DR. BART ADAMS, JR, and JOSEPHINE ADAMS, individually as parents and next of kin of BRIAN ADAMS, deceased; and DR. BART ADAMS, JR.  as the Personal Representative of the Estate of Brian Adams,** ) ) ) ) ) ) ) ) | |
| ) | **Case No. 3:23-cv-00001** |
| ) | |
| ) | **District Judge: Eli J. Richardson** |
| ) | |
| ) | **Magistrate Judge: Barbara D. Holmes** |
| **Plaintiffs,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **vs.** ) | |
| ) | |
| ) | |
| **THE VANDERBILT UNIVERSITY** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs, Bart Adams and Josephine Adams ("Plaintiffs" or the "Adams"), respond as follows in opposition to Defendant, Vanderbilt University's ("Defendant" or "Vanderbilt"), motion to dismiss the First Amended Complaint ("Amended Complaint").

## PRELIMINARY STATEMENT

The Adams filed an Amended Complaint on February 22, 2023. The Amended Complaint alleges Vanderbilt failed to exercise ordinary reasonable care to prevent and guard against a known, foreseeable, and preventable risk of deadly harm to Plaintiffs' son, Brian Adams, which resulted in Brian's death while residing in the dorms on

Vanderbilt's campus. Plaintiffs also allege Vanderbilt discriminated against Plaintiffs' son based upon his known mental health disability and that Vanderbilt's conduct materially breached contractual agreements between Plaintiffs and Vanderbilt.

Vanderbilt now seeks to dismiss Plaintiffs' First Amended Complaint in its entirety, pursuant to a Rule 12(b)(6) motion to dismiss. But, the extensive factual allegations set forth in the Amended Complaint, when accepted as true and construed in favor of Plaintiffs, sufficiently state claims for relief. Therefore, Vanderbilt's motion must be denied.

Vanderbilt's motion improperly challenges Plaintiffs' ability to prove their claims *instead* of challenging the *sufficiency* of their well-pleaded allegations. Such arguments would require the Court to make premature determinations of law not properly before the Court on a Rule 12(b)(6) motion. Therefore, Vanderbilt's motion must be denied.

## <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure only require initial pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Accordingly, detailed factual allegations are not required to withstand a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a Rule 12 motion to dismiss, factual allegations in a complaint must only raise the pleader's right to relief above the speculative level and state a claim that is plausible on its face. *Id.* Factual content is plausible if it is more than a mere recitation of

the elements and allows a court to draw a reasonable inference that the defendant is liable based on the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding a Rule 12(b)(6) motion to dismiss, the Court is obligated to accept the allegations as true and construe the allegations in a light most favorable to the plaintiff. See *Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir.2005). Accordingly, to survive a Rule 12 motion to dismiss, a complaint must only contain sufficient factual allegations that, when accepted as true and construed in the plaintiff's favor, allow the court to draw an inference that the defendant is liable for the claims alleged. *Id*. Even if it appears recovery is remote and unlikely, a well-pleaded complaint may proceed. *Twombly* at 556, citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## ARGUMENT

### I. THIS IS NOT A HEALTHCARE LIABILITY ACTION

The Amended Complaint does not allege medical malpractice against a health care provider, nor does it assert Plaintiffs' injuries arise out of or in connection with the provision of health care services in a medical setting. As such, Plaintiffs' claims are not subject to the requirements of the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. §§ 29-26-101, et seq.

#### i. Allegations in Original Complaint are Irrelevant.

Vanderbilt attempts to argue the claims in the Amended Complaint are subject to the THCLA based upon the allegations in the original Complaint. But, Plaintiffs' Amended Complaint supersedes and supplants the original complaint, thereby mooting any motions or arguments based on the original Complaint. See *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). Especially when the allegations in the amended complaint are

substantially different than those set forth in the original complaint. *Id.* As such, Vanderbilt's reliance on the allegations set forth in the original Complaint is misplaced and its arguments based upon the Original Complaint are moot and without merit.

### ii. Claims Not Asserted Against a "Health Care Provider."

The claims in the Amended Complaint are not subject to the THCLA because the claims are not asserted against a "health care provider." Therefore, Vanderbilt's motion must be denied.

A claim is considered a "health care liability action" subject to the THCLA pre-suit requirements when: (1) it is a civil action; (2) *the claim is against a health care provider*; and (3) the harm complained of arises from the provision of, or failure to provide, health care services. See *Forsythe v. Jackson Madison County Gen. Hosp. Dist.,* 2022 WL 17247615, at *4 (Tenn. Ct. App. Nov. 28, 2022)(emphasis added); See also Tenn. Code Ann. § 29-26-101(a)(1)(definition of "health care liability action").

"Health care provider" is defined under the THCLA to include health care practitioners, health care facilities licensed to provide health care services under Tennessee's health and safety laws, and corporate entities comprised of licensed practitioners. *See* Tenn. Code Ann. § 29-26-101(a)(2).

The Amended Complaint only asserts claims against Vanderbilt University as an educational institution, not a "health care provider." For Vanderbilt to be considered a "health care provider" it must be a facility that provides health care services licensed and regulated under Tennessee's health and safety statutes. See *Kelley v. Apria Healthcare, LLC*, 232 F. Supp. 3d 983, 991 (E.D. Tenn. 2017). Vanderbilt University is a nonprofit educational institution, not a medical facility that provides health care services regulated

- 4 -

by the state of Tennessee. Therefore, Vanderbilt's assertion that Plaintiffs' claims are subject to the THCLA are without merit.

There are facilities bearing Vanderbilt's name that are likely considered "health care providers" under the THCLA, but the Amended Complaint does not assert claims against these facilities. Vanderbilt University and Vanderbilt University Medical Center became separate and legally distinct entities in 2016. Plaintiffs' claims are not against Vanderbilt University Medical Center, Vanderbilt University Psychiatric Hospital, Vanderbilt University Counseling Center, nor any other medical facility or individual licensed and regulated under Title 63 or Title 68 of the Tennessee Code. As such, the claims in the Amended Complaint are not asserted against a "health care provider." Therefore, the claims are not subject to the THCLA.

Vanderbilt attempts to frame the Amended Complaint as involving a "health care provider" because Plaintiffs' allege Brian saw an unlicensed student counselor at the Vanderbilt University Counseling Center ("UCC"). But, the Amended Complaint clearly alleges this student counselor or "therapist" was *unlicensed,* allegations the Court must accept as true for purposes of a Rule 12 motion. (D.E. No. 8, pp. 6-7). Therefore, Vanderbilt's argument is wholly without merit and the claims in the Amended Complaint are not subject to the pre-suit requirements under the THCLA.

Vanderbilt's motion attempts to dispute many of Plaintiffs' allegations in the Amended Complaint to mischaracterize Plaintiffs' claims are being subject to the THCLA. But, the Court is obligated to accept Plaintiffs' well-pleaded allegations as true for purposes of a Rule 12 motion to dismiss. If Vanderbilt seeks to have the court make determinations of law and challenge Plaintiffs' ability to prove its well-pleaded claims,

Vanderbilt should file a properly supported motion under Rule 56, not a Rule 12 motion to dismiss.

### iii. Claims of Ordinary Negligence, Premises Liability, Discrimination, and Breach of Contract Do Not Arise Out of the Provision of Health Care Services

The Amended Complaint is also not subject to the THCLA because Plaintiffs' injuries do not arise out of the provision of healthcare services in a medical setting. Simply put, this is not a medical malpractice action based on the negligent provision of medical care.

Claims are only considered subject to the THCLA when the harm complained of arises from "the provision of, or failure to provide, health care services." *Forsythe* 2022 WL 17247615, at \*4. The purpose of the THCLA pre-suit notice requirements is to provide advance notice of civil claims that "arise within a medical setting." *Id*. at \*5. Accordingly, claims that do not arise from the provision of healthcare services in a medical setting are not subject to the THCLA.

In *Forsythe,* the Tennessee Court of Appeals determined claims regarding the application of a hospital's patient suicide policy by hospital staff were subject to the THCLA because the claim arose in a medical setting and necessitated expert medical proof. *Id*. Here, Plaintiffs' claims are not asserted against a health care provider, nor are they related to whether a health care provider provided adequate medical care in a medical setting. And, no medical proof or medical expert testimony is necessary to establish Plaintiffs' claims. Therefore, the THCLA does not apply the claims alleged in the Amended Complaint.

The Amended Complaint alleges claims of ordinary negligence, premises liability, discrimination, and breach of contract based upon Vanderbilt's failure to exercise

ordinary reasonable care and failure to accommodate and house Plaintiffs' son in light of his known mental health impairment/disability. Such tort and contract claims unrelated to the provision of medical care are simply not subject to the requirements of the THCLA.

Even if Plaintiffs' claims arose in a medical setting, they still would not be subject to the THCLA because the injuries complained of are not sufficiently related to the provision of medical care. See *Cordell v. Cleveland Tennessee Hosp., LLC*, 544 S.W.3d 331, 338 (Tenn. Ct. App. 2017); *C.D. v. Keystone Continuum, LLC*, 2018 WL 503536 (Tenn. Ct. App. Jan. 22, 2018) (torts committed in hospital or medical setting not subject to THCLA if claims unrelated to provision of medical care). Although Brian Adams received treatment for a serious mental health impairment, Plaintiffs' claims are not based upon Brian's mental health treatment. In fact, Plaintiffs' claims aren't based upon any medical care or treatment. Therefore, the THCLA does not apply, and Vanderbilt's motion must be denied.

Vanderbilt relies upon *Forsythe v. Jackson Madison County Gen. Hosp. Dist.,* 2022 WL 17247615 (Tenn. Ct. App. Nov. 28, 2022) for the proposition that Plaintiffs' claims are subject to the THCLA because the Amended Complaint alleges Vanderbilt failed to follow suicide protocols. But, *Forsythe* is readily distinguishable for reasons already set forth above. To wit, *Forsythe* involved application of a hospital patient suicide policy by hospital staff that necessitated medical expert testimony.

Here, Plaintiffs' claims are not asserted against a health care provider nor are the claims based upon the provision of medical care, or the application of the policies of a health care provider, in a medical setting that would necessitate expert medical proof. Therefore, Plaintiffs' claims are not subject to the THCLA and Vanderbilt's motion must be denied.

### iv. **Plaintiffs' Federal Discrimination Claims Preempt the THCLA**

To the extent Vanderbilt attempts to apply the provisions of the THCLA to dismiss Plaintiffs' discrimination claims under the ADA and Section 504 of the Rehabilitation Act, the THCLA must be preempted because the THCLA's pre-suit requirements conflict with, and operate as a bar to, Plaintiffs' otherwise valid discrimination claims.

The ADA and Rehabilitation Act do not contain express preemption provisions. *Mary Jo C. v. New York State & Loc. Ret. Sys*., 707 F.3d 144, 161–62 (2d Cir. 2013). But, "Courts have recognized two types of implied preemption: (1) field preemption, where Congress has manifested an intent to 'occupy the field' in a certain area ...; and (2) conflict preemption, where state law 'actually conflicts with federal law." *Niagara Mohawk Power Corp*., 673 F.3d at 95 (quoting *English v. Gen. Elec. Co*., 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)).

"An actual conflict between state and federal law exists when compliance with both federal and state regulations is a physical impossibility, or when state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Marsh v. Rosenbloom*, 499 F.3d at 177 (2nd Cir. 2007). An actual conflict also exists "where federal law is in 'irreconcilable conflict' with state law." *Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 705 (2d Cir.1998) (quoting *Barnett Bank v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)). Therefore, to the extent the THCLA pre-suit provisions frustrate or act as an obstacle to the accomplishment of the purpose and objectives of the ADA or the Rehabilitation Act, such provisions must be preempted.

With respect to the ADA and the Rehabilitation Act, Congress provided a broad mandate to effectuate its sweeping purpose to forbid discrimination against disabled individuals. *Martin*, 532 U.S. at 675, 121 S.Ct. 1879. The ADA aims to provide a clear and

comprehensive national mandate for the elimination of discrimination against individuals with disabilities. *See* 42 U.S.C. § 12101(b)(1). The ADA represents Congress's attempt to apply a clear and comprehensive national mandate to the services, programs, or activities of any place of public accommodation. *United States v. Georgia*, 546 U.S. at 154, 126 S.Ct. 877. Therefore, provisions of state law, such as the THCLA, that create an impediment to effectuate the purposes of the ADA and Rehabilitation Act must be preempted.

Vanderbilt attempts to rely on the THCLA pre-suit requirements to dismiss Plaintiffs valid claims to prevent impermissible discrimination under the ADA and Rehabilitation Act. But, these provisions of the THCLA irreconcilably conflict with the sweeping provisions of the ADA and Rehabilitation Act to forbid impermissible discrimination. And, prohibiting Plaintiffs from pursing their ADA and Rehabilitation Act claims based upon the THCLA pre-suit requirements would render these federal statutes powerless to prevent impermissible discrimination merely because discriminatory conduct allegedly arose in connection with the provision of medical care. Therefore, the THCLA pre-suit notice requirements must be preempted by the ADA and Rehabilitation Act to allow for the enforcement of Plaintiffs' otherwise valid discrimination claims.

## II.  THE AMENDED COMPLAINT SUFFICIENTLY STATES A CLAIM FOR WRONGFUL DEATH BASED UPON PREMISES LIABILITY

The Amended Complaint sufficiently states a plausible wrongful death premises liability claim against Vanderbilt. The facts alleged in the Amended Complaint, when accepted as true and construed in a light most favorable to Plaintiffs, allow the court to draw a reasonable inference that Vanderbilt failed to exercise reasonable care to prevent

or guard against a known unsafe and dangerous condition that was the actual and proximate cause of Brian Adams death.

To state a premises liability claim, a plaintiff must plead, in addition to the elements of negligence, that a property owner caused or created a dangerous or unsafe condition on the property, or that the owner had actual or constructive knowledge of the condition prior to the incident in question. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). The facts pled in the Amended Complaint establish Vanderbilt caused, created, knew, and/or should have known of a foreseeable dangerous condition on its campus that was the actual and proximate cause of Brian's premature death due to Vanderbilt's failure to exercise reasonable care. Such allegations are sufficient to state a claim against Vanderbilt for wrongful death under a theory of premises liability.

A "dangerous or unsafe condition" is a condition that creates an unreasonable risk of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.*

The Amended Complaint alleges Brian Adams' suicide was foreseeable because Vanderbilt knew of, and responded to, previous suicide attempts, knew of Mr. Adams' mental health treatment related to his previous suicide attempts, knew Mr. Adams continued to exhibit suicidal ideations after treatment, and knowingly placed Mr. Adams in the same suicide-prone situation and environment without taking any reasonable precautionary or alternative measures. And, the Amended Complaint alleges Vanderbilt was aware of other factors increasing Mr. Adams' stress, anxiety and likelihood of suicide, such as failing his coursework while he was hospitalized after his initial suicide attempts

and increasing his workload over the summer to pressure him to withdraw from school. (D.E. No. 8, ¶¶ 99-104, 118-120, 130-138). These allegations are more than sufficient to create a reasonable inference that Vanderbilt created or knew of a dangerous and unsafe condition that presented an unreasonable risk of harm giving rise to a duty to guard against the risk of harm. Therefore, the Amended Complaint states a plausible claim against Vanderbilt based upon premises liability.

The following factors are also considered in deciding whether or not a risk is unreasonable: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by defendant; (4) the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; (5) the relative usefulness of the safer conduct; and (6) the relative safety of alternative conduct. *Id*.

The Amended Complaint alleges facts indicating there was a foreseeable loss of life and readily available alternatives Vanderbilt could have utilized to prevent Mr. Adams' loss of life, which, under these factors, weigh in favor of a finding that there was an unreasonable risk of harm Vanderbilt was obligated to guard against under the circumstances. (D.E. No. 8, pp. 8-11, 18-22). As such, the Amended Complaint states a plausible claim for relief against Vanderbilt based upon the dangerous and unsafe condition it created on its campus sufficient to withstand a Rule 12 motion to dismiss.

The Amended Complaint sufficiently alleges Vanderbilt knew or should have known of the foreseeable dangerous and unsafe condition that presented a threat to Brian Adams life. And, the Amended Complaint further alleges Vanderbilt, despite having actual and/or constructive knowledge of this dangerous condition, failed to take any readily available reasonable alternative courses of conduct to prevent the loss of life, such

as readmitting Brian, contacting his emergency-contacts/parents, or sending him home for the summer, among others. (*Id.*) Such allegations are sufficient to create a reasonable inference that Vanderbilt failed to exercise reasonable care to guard against an unsafe or dangerous condition under a theory of premises liability. Therefore, Vanderbilt's motion must be denied.

Vanderbilt attempts to rely upon *Lawler as next friend of Estate of Lawler v. Hardeman County, Tennessee*, 2019 WL 6310729 (USDC W.D. Tenn. Nov. 25, 2019), for the conclusory proposition that Mr. Adams' risk of suicide wasn't a foreseeable "dangerous or unsafe condition." But, *Lawler* is easily distinguishable, as the plaintiff in *Lawler* failed to allege the defendants were aware of a risk of harm or aware of any similar incidents. *Id.* at *6.

Here, Plaintiffs allege sufficient facts that Vanderbilt was very much aware of this specific dangerous condition as well as similar suicide incidents involving other students on campus. (D.E. 8, ¶¶ 118 - 120). Therefore, Vanderbilt's reliance on *Lawler* remains misplaced.

Vanderbilt's argument that Plaintiffs fail to state a claim because the Amended Complaint does not identify a specific physically dangerous condition is also without merit. The determination of the existence of an "unsafe condition" depends upon whether there is a foreseeable risk of harm. *See McCall* at 153, *supra*. As set forth above, the Amended Complaint alleges sufficient facts to create a reasonable inference that Vanderbilt created a "dangerous condition," given the foreseeability of harm, the gravity of the harm, and readily available reasonable alternatives to prevent the harm. Especially in light of Vanderbilt's specific knowledge of Mr. Adams' suicidal history and awareness

of similar student suicides on campus. Therefore, Vanderbilt's argument that there wasn't a "dangerous condition" is without merit and its motion must be denied.

Vanderbilt's motion must also be denied because Vanderbilt's arguments attempt to prematurely weigh evidence not yet before the Court and challenge Plaintiffs' ability to prove their claims instead of challenging the sufficiency of the well-pleaded allegations. Vanderbilt's arguments improperly seek to have the Court prematurely make determinations of law as to the existence of an unsafe or dangerous condition, the foreseeability of the harm, and whether Vanderbilt breached a duty owed to Mr. Adams in light of the gravity of harm, foreseeability of harm, and reasonably available alternative courses of action available to Vanderbilt. Such determinations of law are premature on a Rule 12 motion to dismiss that only tests the sufficiency of the allegations. Therefore, Vanderbilt's arguments are without merit.

As set forth above, the allegations in the Amended Complaint are sufficient to create a reasonable inference that Vanderbilt created, knew, or should have known of a dangerous or unsafe condition and its failure to exercise reasonable care to prevent or guard against that dangerous condition was the actual and proximate cause of Brian Adams' death. Therefore, the Amended Complaint states a plausible claim for wrongful death premises liability, and Vanderbilt's motion must be denied.

### III. THE AMENDED COMPLAINT SUFFICIENTLY STATES A CLAIM FOR WRONGFUL DEATH BASED UPON NEGLIGENCE

#### i. Amended Complaint Sufficiently Alleges Negligence

The Amended Complaint alleges facts sufficient to state a plausible claim of negligence. The facts alleged in the Amended Complaint, when accepted as true and

- 13 -

Case 3:23-cv-00001   Document 32   Filed 05/19/23   Page 13 of 29 PageID #: 226

construed in a light most favorable to the Plaintiffs, are sufficient to allow the court to draw a reasonable inference that Vanderbilt's failure to exercise reasonable care was the actual and proximate cause of Brian Adams death. Therefore, Vanderbilt's motion must be denied.

To state a negligence claim, a Plaintiff must only allege the following: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. See *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019). The Amended Complaint sufficiently alleges a plausible claim of negligence against Vanderbilt. Therefore, Vanderbilt's motion must be denied.

The Amended Complaint alleges Vanderbilt owed Mr. Adams, a student required to reside on campus, a duty of reasonable care to protect against foreseeable harm. (D.E. 8, ¶ 128). The Amended Complaint also alleges Vanderbilt has a heightened duty of care because it is a "residential university," requiring its students to live on campus and requiring its students to compensate the university for such housing. (D.E. 8, ¶ 128).

The Amended Complaint alleges Vanderbilt breached the duty of care owed to Mr. Adams by failing to follow its residential housing guidelines and policies, failing to implement or follow any suicide prevention policies, by placing Mr. Adams alone in a dorm room under similar circumstances that he previously attempted to take his own life, by failing to notify Mr. Adams' Resident Advisor, or any student housing staff, of Mr. Adams' suicidal history, and by failing to take any preventative or reasonable alternative measures to guard against a known and foreseeable risk of significant harm, which ultimately caused Mr. Adams' death. (D.E. 8, ¶¶ 130-138). Therefore, the allegations are sufficient to state a claim of negligence.

The Amended Complaint also alleges Vanderbilt knew Mr. Adams previously attempted suicide while residing on campus, Mr. Adams received treatment due to his suicidal tendencies, that Mr. Adams continued to report suicidal ideations after treatment, and that there was aware of a pattern or practice of students attempting or committing suicide on campus (D.E. 8, ¶¶ 118-120, 130-133). Yet, despite Vanderbilt's knowledge of these circumstances and the foreseeability of harm to Mr. Adams, Vanderbilt placed him in a dorm room alone after failing his coursework while he received mental health treatment. And, Vanderbilt increased his coursework to pressure Mr. Adams to withdraw from school. Such allegations are sufficient to create a reasonable inference that Vanderbilt breached a duty of care owed to Mr. Adams and its actions were the actual and proximate cause of Mr. Adams' death. As such, the Amended Complaint states a plausible claim of negligence against Vanderbilt. Therefore, Vanderbilt's motion must be denied.

### ii. Vanderbilt's Causation and Duty Arguments Are Without Merit

The Amended Complaint sufficiently alleges facts to state a plausible claim of negligence against Vanderbilt. Yet, Vanderbilt attempts to assert the Amended Complaint fail to state a claim for relief based upon premature arguments that Plaintiffs cannot prove their allegations that Vanderbilt owed a duty of care and that Vanderbilt was the actual or legal cause of Brian's death.

But, these arguments attempt to have the Court make premature determinations of law regarding the elements of Plaintiffs' claims before allowing Plaintiffs an opportunity to engage in discovery and prove their well-pleaded allegations. Such arguments are premature and inappropriate on a Rule 12 motion to dismiss that only challenges the

sufficiency of the allegations in the initial pleadings. Therefore, Vanderbilt's arguments are without merit and its motion must be denied.

All that is required for the Plaintiffs' claims to withstand a Rule 12 motion to dismiss are allegations that state a claim for relief beyond speculation. *See Iqbal* and *Twombly, supra*. The facts alleged in the Amended Complaint, when accepted as true and construed in favor of Plaintiffs, are sufficient to state a plausible claim of negligence beyond speculation.

First, the Amended Complaint alleges sufficient facts to create a reasonable inference that Mr. Adams' suicide was reasonably foreseeable and that an exception to the "suicide rule" likely applies. Vanderbilt attempts to assert it was not the proximate cause of Mr. Adams' death based upon the premature legal conclusion that the facts in this matter do not fall within an exception to Tennessee's "suicide rule," which provides that suicide may be a superseding cause in the absence of common exceptions. *Cotten v. Wilson*, 576 S.W.3d 626, 647 (Tenn. 2019). But, the facts alleged in the Amended Complaint are sufficient to create a reasonable inference that an exception to the suicide rule may apply. Therefore, Vanderbilt's argument is without merit.

The Tennessee Supreme Court has recognized that "suicide may not be deemed a superseding cause even when the facts do not neatly fit into one of the common exceptions." *Id.* Especially where the suicide is reasonably foreseeable. *Id.* Accordingly, whether suicide is a superseding cause is based upon an analysis of the unique facts of a particular case. And, an exception may apply even where the facts do not neatly fit within a previously announced common exception to the "suicide rule." Therefore, Vanderbilt's conclusory argument that it is not the proximate cause of Mr. Adams' death based upon the "suicide rule" at this initial pleading stage of this matter is without merit.

As further explained by the Tennessee Supreme Court, "[courts] recognized that *suicide is not intrinsically a superseding intervening event* that will always cut off the liability of the defendant, even if the decedent had some ability to reason and exercise the power of choice at the time of the suicide. Because the focus is on whether suicide was a reasonably foreseeable probability, the more common exceptions involve fact patterns in which it is more likely that the defendant should have foreseen the decedent's suicide. *Cotton v. Wilson*, 576 S.W.3d 626, 642–43 (Tenn. 2019)(emphasis added).

As set forth above, the Amended Complaint is replete with factual allegations indicating Mr. Adams' suicide was foreseeable. (D.E. 8, ¶¶ 99-104, 118-120, 130-138). These allegations also support a reasonable inference that an exception to the suicide rule likely applies in this matter. Therefore, Vanderbilt's argument that Mr. Adams' suicide was an unforeseeable superseding cause is without merit and Vanderbilt's motion must be denied.

The Amended Complaint also sufficiently alleges facts to create a reasonable inference that Vanderbilt owed Mr. Adams an ordinary duty of care and/or a heightened duty of care based upon the special custodial relationship between Vanderbilt and Mr. Adams. Therefore, Vanderbilt's argument that it didn't owe Mr. Adams a duty of care is also without merit.

Vanderbilt relies upon the Sixth Circuit precent in *Tumminello v. Father Ryan High Sch., Inc.,* 678 F. App'x 281, 286 (6th Cir. 2017), where the court "expressed doubt" that a special relationship existed between a high school and a student that committed suicide. Vanderbilt also refers to a Sixth Circuit decision in *Stiles v. Grainger Cnty. Sch.* 819 F.3d 834 (6th Cir. 2016), where the Sixth Circuit failed to find a special relationship in the context of a § 1983 claim brought by a middle school student. But, both of these cases

involved involve primary and secondary schools, not a "residential university" with an inherent custodial relationship created by requiring its students to reside on campus, to abide by student housing rules and regulations, and to pay for such housing.

And, those cases did not involve allegations that the school had extensive knowledge of previous suicide attempts by the student, knowledge of continuing suicidal ideations by the student after extensive mental health treatment, or allegations that the school placed the student in a similar suicidal situation with such knowledge and failed to take any precautionary measures, all of which would create a heightened duty of care for a school that mandates its students to reside on campus. Therefore, Vanderbilt's reliance on these decisions is misplaced and its arguments that the Amended Complaint fails to allege a plausible special relationship are without merit.

And, Mr. Adams' suicide was not an isolated or random unforeseeable incident. As alleged in the Amended Complaint, Vanderbilt was aware of a pattern and/or increased prevalence of similar suicide incidents by other students on campus, which imposes a heightened duty of care upon Vanderbilt to prevent such foreseeable incidents. (D.E. 8, ¶¶ 118-120). Vanderbilt has a heightened duty in our current social climate where suicide is a leading cause of death for college students post COVID.[1]

While courts in the past have held that universities are not *in loco parentis*, the duty of care owed by universities is evolving in light of a growing societal awareness of mental health concerns and growing incidents of violence on college campuses. As stated by one state supreme court:

---

[1] See Trends and Prevalence of Suicide of College Students 2017-2021. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9375853/; ADD CDC STUDY

Colleges provide academic courses in exchange for a fee, but a college is far more to its students than a business. Residential colleges provide living spaces, but they are more than mere landlords. Along with educational services, colleges provide students social, athletic, and cultural opportunities…Although college students may no longer be minors under the law, they may still be learning how to navigate the world as adults. They are dependent on their college communities to provide structure, guidance, and a safe learning environment.

*Regents of Univ. of Cal. V. Superior Ct. of Los Angeles Cnty.*, 8 Cal. 4th 148 (Cal. 2010).

Vanderbilt requires its students to reside on campus and its website explicitly states that "[Vanderbilt] Housing and Residential Experience provides *safe, secure, comfortable, accessible* and healthy housing for its residents."[2] Accordingly, the facts alleged are sufficient to state a plausible claim that Vanderbilt has a special relationship with its students.

Vanderbilt's arguments that it did not owe a duty of care are also without merit because they again fail to challenge the sufficiency of the allegations and, instead, challenge Plaintiffs' ability to prove their well-pleaded claims. Whether a special relationship exists is a factually intensive determination of law that must be made by the Court upon a properly supported motion for summary judgment, not a Rule 12 motion to dismiss. Plaintiffs are only required to articulate facts that create an inference that Vanderbilt owed Mr. Adams a duty of care to defeat Vanderbilt's Rule 12 motion, prove the existence of a special relationship.

The allegations in the Amended Complaint, when taken as true and construed in the Plaintiffs' favor, are sufficient to create a reasonable inference that Vanderbilt owed a duty of care to Mr. Adams and that there was a special relationship between Vanderbilt and

---

[2] https://www.vanderbilt.edu/ohare/

Mr. Adams creating an even heightened duty of care. (D.E. 8, ¶¶ 90-104, 118-120, 130-137).

## IV. THE AMENDED COMPLAINT SUFFICIENTLY STATES CLAIMS FOR DISCRIMINATION UNDER TITLE III OF THE ADA AND THE REHABILITATION ACT

The Amended Complaint sufficiently alleges facts to state claims of discrimination under Section 504 of the Rehabilitation Act and under Title III of the Americans with Disabilities Act ("ADA").

The facts alleged in the Amended Complaint, when accepted as true and construed in a light most favorable to Plaintiffs, create a reasonable inference that Vanderbilt discriminated against Mr. Adams on the basis of his disability, failed to make proper modifications to accommodate Mr. Adams' disability, and excluded Mr. Adams from the full benefit and enjoyment of university programs and services on the basis of his disability.

### i. Allegations Sufficiently Allege Violation of Title III of ADA

The Amended Complaint sufficiently alleges facts to state a plausible claim of discrimination under Title III of the ADA.

To state a claim of discrimination under Title III of the ADA, a plaintiff must show: (1) he or she is disabled; (2) the defendant owns, operates, or leases a place of public accommodation; (3) that the Defendant took adverse action against the plaintiff by denying full and equal access to services, goods, facilities, and privileges at the place of public accommodation; and (4) defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature

of the public accommodation. A*beyta v. Stonecrest Med. Ctr.*, No. 3:18-CV-0386, 2018 WL 3472820, at \*3 (M.D. Tenn. July 18, 2018).

The Amended Complaint alleges Brian Adams suffered from a known and recorded mental impairment, that he was regarded or perceived as having an impairment that qualifies as a "disability," and that Vanderbilt owns and operates a place of "public accommodation" as those respective terms are defined under the ADA. (D.E. No. 8, ¶¶ 143 - 144).

"Disability" is defined under the ADA to include individuals with a record of an impairment or being regarded or perceived as having an impairment. 42 U.S.C. § 12102(1). The Amended Complaint alleges Vanderbilt was aware Brian Adams previously attempted suicide and was subsequently hospitalized and treated for his mental health impairment. (D.E. No. 8, ¶¶ 32-34, 46-48). The Amended Complaint also alleges Vanderbilt was aware of Mr. Adams receiving ongoing mental health treatment before and after his suicide attempts and hospitalization. (D.E. No. 8, 53, 56-49). "Public accommodation" is defined to include educational institutions such as Vanderbilt. See 42 U.S.C. § 12181(7)(J). Therefore, the Amended Complaint sufficiently alleges Mr. Adams had, or was regarded as having, a known and obvious "disability" and that Vanderbilt owns and operates a "public accommodation" under the ADA.

The Amended Complaint further alleges Vanderbilt took adverse action against Brian Adams by denying full and equal access to the services, goods, facilities, and privileges offered by Vanderbilt to other students. And, that Vanderbilt failed to make reasonable modifications that would accommodate Brian's disability without fundamentally altering the nature of the school's public accommodation.

Specifically, the Amended Complaint alleges Vanderbilt denied Brian the equal

enjoyment of student housing benefits by failing to provide Mr. Adams with appropriate housing and student services in light of his known mental health impairments. (D.E. 8,150-154). The Amended Complaint further alleges Vanderbilt discriminated against Mr. Adams based on his mental impairment by failing to follow its policies and procedures regarding student housing, failing his coursework while receiving treatment for his disability, and failing to follow policies, procedures, and guidelines for students with such mental disabilities. (*Id.*). Therefore, the Amended Complaint sets forth sufficient allegations to reasonably infer Vanderbilt denied Mr. Adams full and equal access to the programs, services, goods, and facilities offered at the university.

The Amended Complaint further sets forth sufficient facts to create a reasonable inference that accommodating Mr. Adams' mental impairment by initiating proper suicide protocols, providing necessary and appropriate clinical attention, providing minimal support and supervision, or, at the very least, notifying Mr. Adams' parents as his "emergency contracts," would not fundamentally alter the nature of Vanderbilt's public accommodation. (D.E. 8, ¶¶ 153-154). Therefore, the Amended Complaint states a plausible claim of discrimination under Title III of the ADA, and Vanderbilt's motion must be dismissed.

### ii.   Vanderbilt's Title II Arguments Are Without Merit

The Amended Complaint sufficiently alleges claims under Title III of the ADA. But, Vanderbilt attempts to argue Plaintiffs fail to state a claim for relief under the ADA based upon cases interpreting and applying principles from Title II that do not apply to Title III of the ADA. Therefore, Vanderbilt's arguments are without merit and are inapplicable to Plaintiffs' claims brought under Title III of the ADA.

The pleading standards for Title III of the ADA, as discussed above in A*beyta*, are different from the pleading standards for Title II discrimination claims brought against state or local governments. While principles from Title I and Title III apply to Title II claims, the statutory requirements are different. See *Marble v. Tennessee,* 767 F. App'x 647, 651 (6th Cir. 2019)(Principles from Title I and Title III may inform Title II decisions, but the provisions, implementing regulations, and requirements between the titles are different). Therefore, Vanderbilt's arguments based upon Title II's requirements and reasonable accommodation regulations are without merit.

The cases cited by Vanderbilt in support of its arguments all involve claims brought against public universities under Title II of the ADA, not Title III public accommodation claims. And, these cases primarily involve challenges to university academic decisions and academic criteria, which are afforded great deference under the ADA because educational institutions are not obligated to lower academic standards as an accommodation under the ADA. See *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 436 (6th Cir. 1998). As such, these decisions focused on the failure to accommodate student requests to academic regulations are readily distinguishable from Plaintiffs' claims brought under Title III alleging Vanderbilt was deliberately indifferent to their son's known mental disability by denying him full and equal access to housing, counseling and other services and programs offered at a place of public accommodation. Therefore, Vanderbilt's arguments are without merit.

Most notably, a plaintiff is not obligated to make an express request for an accommodation when the allegations involve a defendant's indifference to an open and obvious mental condition. *See* A*beyta, supra. See also Doe v. Texas A&M Univ., 2022* WL 5250294, at *11 (S.D. Tex. Oct. 6, 2022)(Plaintiff states plausible claim for failure to

accommodate without making specific request for accommodation where mental disability and need to accommodate is known or obvious). Arguably, a Title III plaintiff shouldn't be required to make any request for an accommodation, as that requirement is derived from Title II regulations. *See Marble*; *See also* A*beyta* at *3(Plaintiff stated Title III claim without any accommodation request). Accordingly, Vanderbilt's arguments that Plaintiffs fail to state a plausible claim under Title III based upon requirements and caselaw derived from Title II of the ADA are without merit. Therefore, Vanderbilt's motion must be denied.

### iii. Amended Complaint Sufficiently Alleges Rehabilitation Act Claims

The Amended Complaint sufficiently alleges facts to state a plausible claim of discrimination under Section 504 of the Rehabilitation Act. Therefore, Vanderbilt's motion must be denied.

A plaintiff states a claim under the Rehabilitation Act by showing: (1) the plaintiff is "disabled" or "handicapped"; (2) the plaintiff is otherwise qualified for participation in the program at issue; (3) the plaintiff was excluded on the basis of his or her disability or handicap; and (4) the program receives federal funding. *Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 (6th Cir. 2008). Intentional discrimination for purposes of the Rehabilitation Act may be inferred from a defendant's deliberate indifference to a plaintiff's disability in violation of their rights under the Act. *Id.*

The Amended Complaint alleges Brian Adams had a qualified "handicap" or "disability" and that Vanderbilt receives federal funding for its programs and activities. (D.E. 8, ¶¶ 163-164). The Amended Complaint further alleges Vanderbilt excluded and deprived Mr. Adams of the full benefits of its housing, counseling, and academic programs based on his disability. (D.E. 8, ¶¶ 165-167). Specifically, the Amended

Complaint sets forth detailed facts that Vanderbilt knew Mr. Adams suffered from a mental health disability that posed a significant risk of harm to Mr. Adams, and to other students on campus. Yet, Vanderbilt failed to notify, work with, or coordinate between its student counselors, faculty head, resident staff, head resident, and resident advisors, or take any other reasonable actions to accommodate Mr. Adams in conjunction with Vanderbilt's student counseling services or as part of its "Housing and Residential Experience," which ultimately led to Mr. Adams' loss of life due to his disability. (D.E. 8, ¶¶ 38-42, 163-167). And, the Amended Complaint alleges Vanderbilt took adverse academic actions against Mr. Adams based upon his disability. (*Id.*). As such, the Amended Complaint sets forth sufficient allegations to state a plausible discrimination claim against Vanderbilt under the Rehabilitation Act.

These factual allegations of a complete indifference to Mr. Adams' known and obvious mental health disability are sufficient to create a reasonable inference that Vanderbilt intentionally discriminated against Mr. Adams and that Vanderbilt improperly denied Mr. Adams the full benefits of its housing, counseling, and other programs and services in violation of the Rehabilitation Act. See A*beyta, supra*. (Allegations of deprivation of services based upon known mental health impairment sufficient to state claim under Rehabilitation Act). Therefore, Vanderbilt's motion must be denied.

Vanderbilt attempts to assert Plaintiffs fail to state a claim under the Rehabilitation Act because Plaintiffs did not sufficiently allege they requested a reasonable accommodation. (D.E. 25, p. 20). But, Plaintiffs are not required to allege they made a specific request for an accommodation when claiming intentional

discrimination based upon a known and obvious disability. *See Knox Cnty. Tenn. v. M.Q.*, 62 F.4th 978 (6th Cir. 2023)(Plaintiff can allege disability discrimination under intentional discrimination or failure to accommodate theory, but only failure to accommodate theory is based on Defendant's denial of a reasonable request for accommodation); *See also Doe v. Texas A&M Univ.,* 2022 WL 5250294, at *11 (S.D. Tex. Oct. 6, 2022)(Request for accommodation not required where mental disability and need for accommodation is known or obvious). Therefore, Vanderbilt's argument is without merit.

Vanderbilt also asserts Plaintiffs fail to sufficiently allege Vanderbilt discriminated against Mr. Adams based on his disability. But, the Amended Complaint does not have to contain detailed allegations regarding discrimination, just sufficient factual allegations to create an inference that Vanderbilt discriminated against Mr. Adams based on his disability. *See Iqbal* and *Twombly, supra.* As set forth above, the facts alleged in the Amended Complaint are more than sufficient to state plausible claims of discrimination based upon Vanderbilt's indifference to Brian Adams' disability. As such, Vanderbilt's argument is again without merit.

### V.   THE AMENDED COMPLAINT SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT

The Amended Complaint alleges sufficient facts to state a plausible claim for breach of contract because the facts, when taken as true and construed in favor of Plaintiffs, create a reasonable inference that Vanderbilt materially breached enrollment agreements entered between Plaintiffs and Vanderbilt that caused Plaintiffs' damages.

The Amended Complaint alleges valid and enforceable contracts exist between Vanderbilt and Plaintiffs regarding Brian's enrollment and attendance at Vanderbilt, his

housing provided by Vanderbilt, and the services Brian received through the UCC at Vanderbilt. (D.E. 8, ¶¶ 173-175). The Amended Complaint further alleges Vanderbilt materially breached these agreements, which caused Brian and Plaintiffs to suffer damages. (D.E. 8, ¶¶ 177-180). Such allegations are sufficient to create an inference and state a plausible claim for breach of contract in Tennessee. See *C&W Asset Acquisition, LLC. v. Oggs*, 230 S.W.3d 671 (Tenn. Ct. App. 2007) (Elements of breach of contract claim include (1) existence of enforceable agreement or contract; (2) nonperformance amounting to breach; and (3) damages caused by breach). Therefore, the facts pled are sufficient to state a claim for breach of contract.

Vanderbilt attempts to rely on *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 892 (M.D. Tenn. 2022), for the proposition that Plaintiffs' fail to state a claim because they failed to set forth detailed allegations regarding specific contractual provisions breached by Vanderbilt. But, the court in *Evans* determined the plaintiff failed to state a claim because there were no allegations indicating the existence of an express contract. *Id.* at 894.

Here, Plaintiffs allege there are valid and enforceable agreements between the parties governing Brian Adams' enrollment at the university and Vanderbilt's provision of housing, food, amenities, activities and services incident to Mr. Adams' enrollment. (D.E. 8, ¶¶ 177-180). Such allegations are sufficient to create a reasonable inference that an express contract exists between the parties to withstand a Rule 12 motion to dismiss. The student-university relationship between Brian and Vanderbilt also creates an implied contract and the Amended Complaint sufficiently alleges plausible claims against Vanderbilt under those implied agreements. See *Evans* at *894-895 (Court held that even

in the absence of an express contract, an implied contract exists between a student and a university based upon the student-university relationship.).

The Amended Complaint does not have to contain detailed factual allegations to state claim against Vanderbilt for breach of contract, just sufficient allegations to create an inference that a contract exists and it was breached by Vanderbilt. *See Iqbal* and *Twombly, supra*. Plaintiffs' Amended Complaint sufficiently alleges enforceable contracts exist between Plaintiffs and Vanderbilt and that Vanderbilt's failure to provide adequate housing, counseling, and other student services breached those agreements. As such, the Amended Complaint sufficiently alleges claims of breach of contract, and Plaintiffs should be allowed to engage in discovery and prove their well-pleaded claims. Therefore, Vanderbilt's motion must be denied.

## **CONCLUSION**

The Amended Complaint contains sufficient factual allegations, when accepted as true and construed in favor of the plaintiffs, to state plausible claims for relief. Therefore, Vanderbilt's motion must be denied.

Dated: May 19, 2023.                         Respectfully submitted,

                                               /s/ Lee Pope

William B. Hawkins III (BPR #20117)
Lee Pope (BPR #28742
**Hawkins Hogan, PLC**
205 17th Avenue North, Suite 202
Nashville, Tennessee 37203
(615) 726-0050
(615) 726-5177 (facsimile)
whawkins@hawkinshogan.com
lpope@hawkinshogan.com

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing motion was served upon the following parties via the Court's CM/ECF system on this 19th day of May 2023 to all counsel of record:

*MICHAEL K. ALSTON*
*HUSCH BLACKWELL LLP*
*736 Georgia Avenue, Suite 300*
*Chattanooga, TN 37402*
*Phone: (423) 266-5500*
*Fax: (423) 266-5499*
*Michael.Alston@huschblackwell.com*

*SCOTT MARTIN,*
*HUSCH BLACKWELL LLP*
*4801 Main, Suite 1000*
*Kansas City, Missouri 64112*
*Phone: (816) 983-8000*
*Fax: (816) 983-8080*
*Scott.Martin@huschblackwell.com*

*MARY E. DEWEESE,*
*HUSCH BLACKWELL LLP*
*120 South Riverside Plaza*
*Chicago, Illinois 60606*
*Phone: (312) 655-1500*
*Fax: (312) 655-1501*
*mary.deweese@huschblackwell.com*

*Attorneys for Defendant, The Vanderbilt University*

/s/ Lee Pope
Lee Pope