IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DR. BART ADAMS, JR., et al.,            )
                                        )
        Plaintiffs,                     )
                                        )        NO. 3:23-cv-00001
v.                                      )
                                        )        JUDGE RICHARDSON
VANDERBILT UNIVERSITY,                  )
                                        )
        Defendant.                      )

## ORDER

Pending before the Court is Plaintiffs' "Motion to Alter or Amend and for Relief from Final Order" pursuant to Fed. R. Civ. P. 59(e) and 60(b), and Local Rules 7.01 and 15.01 (Doc. No. 51, "Motion"). The Motion was supported by an accompanying brief and a proposed second amended complaint (Doc. Nos. 51-1 and 51-2, respectively). Defendant filed a response in opposition to the Motion, (Doc. No. 58, "Response"), and Plaintiffs filed a reply to the Response (Doc. No. 59, "Reply").

## BACKGROUND

In July 2021, Brian Adams, a student at Vanderbilt University (the "University"), tragically died by suicide. His parents, Dr. Bart Adams and Josephine Adams ("Plaintiffs"), acting both individually and as representatives of their son's estate, filed a complaint to initiate this action against the University, (Doc. No. 1), then filed an amended complaint. (Doc. No. 8, "First Amended Complaint"). The First Amended Complaint alleged multiple causes of action, including wrongful death negligence, premises liability, violations of the Americans with Disabilities Act (ADA), violations of Section 504 of the Rehabilitation Act, and breach of contract. The claims

stemmed from the University's alleged failure to meet its obligations in providing support and care for Brian Adams during his time as a student at the University.

According to the First Amended Complaint (the allegations of which are accepted as true at the instant stage), Brian Adams faced documented struggles with mental health issues, including major depressive disorder, social anxiety, obsessive-compulsive disorder, autism spectrum disorder, and generalized anxiety. Allegedly, Vanderbilt's University Counseling Center ("UCC") and Office of Student Care Coordination ("OSCC") were involved in providing mental health services and care coordination for Brian. Plaintiffs allege that, despite these efforts, significant issues arose regarding the adequacy and implementation of support measures, particularly in relation to the University's established policies and procedures, such as those outlined in its Student Handbook and OSCC protocols, prompting them to challenge the University's handling of the situation.

The University filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), (Doc. No. 24, "University's Motion to Dismiss"), which the Court granted in March 2024 via an order (Doc. No. 49, "Order") for reasons set forth in an accompanying memorandum opinion (Doc. No. 48, "Opinion"). Via the Order, the Court dismissed all claims due to the First Amended Complaint containing insufficient allegations to establish the University's liability. With respect to Plaintiffs' negligence claims, the Court held that under Tennessee law, the First Amended Complaint did not contain allegations sufficient to show that the University owed  an affirmative or heightened duty of care to prevent Brian Adams's suicide. Regarding Plaintiffs' premises-liability claims, the Court found that the First Amended Complaint alleged no specific dangerous or unsafe condition on the University's property to support the claim. Regarding Plaintiffs' ADA and Rehabilitation Act claims, the Court determined that Plaintiffs failed to plausibly allege that

Brian Adams suffered from a qualifying disability under the ADA or that he requested reasonable accommodations. Regarding Plaintiffs' breach-of-contract claims, the Court found that the allegations did not plausibly suggest the existence of an implied contract, express or implied, obligating the University to perform the acts alleged as breaches.

In April 2024, Plaintiffs filed the instant Motion, therein seeking leave to file a second amended complaint. Plaintiffs argue that newly discovered evidence, including additional documentation obtained during discovery, substantiates their claims in the First Amended Complaint. The evidence, they assert, shows that the University failed to adhere to its protocols for high-risk students, such as administering a suicide-ideation questionnaire, conducting welfare checks, and providing adequate follow-up care.

In the Motion, Plaintiffs contend that the University's policies and statements, as outlined in its Student Handbook and related materials, create an implied contract that obligates the University to provide support for students facing mental health challenges. Further, Plaintiffs argue, the newly discovered evidence highlights systemic failures on the part of the University, including missed opportunities to intervene, lack of adherence to protocols, and inadequate communication with Brian Adams and his family. The Motion also focuses on the University's alleged breach of its commitment to mental health and well-being as stated in its Community Creed and Student Handbook. Moreover, Plaintiffs argue that the Court, in granting the University's Motion to Dismiss, erred by applying an incorrect legal standard.

<u>LEGAL STANDARD</u>

1.      <u>Rule 59(e)</u>

Motions to alter or amend a judgment, brought pursuant to Fed. R. Civ. P. 59(e), are entrusted to the Court's sound discretion. *United States v. Tenn. Walking Horse Breeders' and*

*Exhibitors' Ass'n*, 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017). A motion under Rule 59(e) is not an opportunity to re-argue a case. *Id.* Rather, the Court may grant a Rule 59(e) motion only if there is: (1) a clear error of law; (2) newly-discovery evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Id.* A motion to alter or amend should not be used to relitigate previously considered issues, to submit evidence which could have been previously submitted in the exercise of reasonable diligence, or to attempt to obtain a reversal of a judgment by offering the same arguments previously presented. *Id.*

Generally, relief under Rule 59(e) is an "extraordinary remedy" restricted to those circumstances in which the moving party has set forth facts or law of a strongly convincing nature that indicate that the court's prior ruling should be reversed. *Harris v. Perry*, 2016 WL 5396701, at *3 (W.D. Tenn. Sept. 27, 2016). As for manifest injustice in particular, a movant under Rule 59(e) must show that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy. *Id.* The Sixth Circuit has made clear that the standard for manifest injustice is "an exacting standard" and that a successful Rule 59(e) motion must "clearly establish a manifest error of law." *Heithcock v. Tenn. Dept. of Children's Servs.*, 2015 WL 5970894, at *1 (M.D. Tenn. Oct. 14, 2015). Mere disagreement with a court's findings does not rise to the level of manifest injustice under Rule 59(e). *McDaniel v. American Gen. Fin. Servs., Inc.*, No. 04-2667B, 2007 WL 20842777, at *2 (W.D. Tenn. July 17, 2007). The "manifest injustice" ground for a Rule 59(e) motion is not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind. *Harris*, 2016 WL 5396701, at *3.

2. <u>Rule 60(b)</u>

Rule 60(b) of the Federal Rules of Civil Procedure provides that the Court may relieve a party from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered earlier; (3) fraud, misrepresentation or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). The party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence. *Settle v. Bell*, 2017 WL 1058365, at *1 (W.D. Tenn. March 20, 2017). Relief from a judgment after its entry is an extraordinary remedy that should be used sparingly. *Duerson v. Henderson County Detention Center*, 2005 WL 3536333, at *1 (W.D. Ky. Dec. 21, 2005).

<u>ANALYSIS</u>

Plaintiff seeks relief under Rules 59(e) and 60(b) to alter or amend the Court's prior judgment dismissing this action with prejudice, specifically arguing that leave to amend the complaint should have been granted. For the reasons set forth below, the Court denies Plaintiff's request.

1. <u>Alleged Newly Discovered Evidence</u>

To justify post-judgment relief under Rule 59(e) or 60(b), newly discovered evidence must be material and not have been discoverable with reasonable diligence before the entry of judgment. *Luna v. Bell*, 887 F.3d 290, 294 (6th Cir. 2018). Plaintiffs claim that newly obtained discovery from Vanderbilt's Office of Student Care Coordination ("OSCC") and University Counseling Center ("UCC") reveals systemic failures in following university policies related to student mental health support. (Response at 10-12). However, as the University notes, these documents were

produced months before the Court's judgment, and Plaintiffs had ample opportunity to seek leave to amend prior to dismissal. (Response at 13-14).

Plaintiffs also rely on what they characterize as newly discovered University documents that supposedly reveal systemic failures in mental-health support for Brian Adams. Specifically, Plaintiffs contend that the University failed to adhere to its own protocols, including by neglecting to administer a suicide-ideation questionnaire, failing to conduct welfare checks, and failing to ensure adequate follow-up care. (Motion at 10-12). Plaintiffs further argue that this evidence, obtained through discovery, demonstrates that OSCC and UCC staff did not implement the necessary interventions, despite knowing of Brian's prior suicide attempt and ongoing struggles with severe mental-health conditions.

Plaintiffs assert that the University's policies, as mentioned above, create enforceable obligations that were not met. *Id.* at 14-17. Plaintiffs also cite purported new evidence supposedly demonstrating that University staff failed to provide necessary academic accommodations despite being aware of Brian's mental health diagnoses, such as major depressive disorder and autism spectrum disorder. According to Plaintiffs, the University's alleged failure to assist Brian with scheduling off-campus therapy and ensuring he received appropriate follow-up services exacerbated his mental-health crisis.

The University argues that this newly discovered evidence was either available before judgment or could have been obtained through reasonable diligence. (Response at 12). Courts consistently hold that evidence is not "newly discovered" if it was available at the time of the initial proceedings. *Luna,* 887 F.3d at 294. The University emphasizes that Plaintiffs had access to the relevant documents well before the Court's ruling but failed to seek leave to amend before judgment was entered. Additionally, the University argues that publicly available materials—such

as the Student Handbook—cannot constitute newly discovered evidence warranting post-judgment relief.

Moreover, the University argues that even if the evidence were considered "newly discovered," it would not change the outcome of the case, because it does not remedy the deficiencies identified in the Court's Opinion explaining the grounds for dismissing this action. Under well-established law, university policies and handbooks do not create legally enforceable duties unless they contain specific contractual language imposing obligations on the university. *Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018). Courts have consistently held that general commitments to student welfare, without explicit contractual obligations, do not establish a duty of care. *Abbariao v. Hamline Univ. Sch. of Law*, 258 N.W.2d 108, 114 (Minn. 1977).

Furthermore, the University contends that Plaintiffs' failure to act diligently in presenting this evidence precludes post-judgment relief. Rule 59(e) and Rule 60(b) are not designed to allow litigants to introduce evidence they failed to present at an earlier stage. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). The Sixth Circuit has held that courts should not grant relief where a party could have obtained and introduced the evidence earlier through due diligence. *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001).

The Court agrees with Defendant's arguments and finds that Plaintiffs have not satisfied the stringent requirements for obtaining relief based on newly discovered evidence under Rule 59(e) or Rule 60(b). Plaintiffs had the opportunity to seek leave to amend their complaint to incorporate new allegations based on this evidence before judgment was entered but failed to do so.

Additionally, even assuming the evidence was newly discovered, it does not alter the legal deficiencies in Plaintiffs' claims. The Court dismissed this case based on the First Amended

Complaint failing to plausibly suggest a legal duty, and none of the purported new evidence serves to plausibly suggest a legal duty on the University's part. The Sixth Circuit has firmly held that a university's internal policies, standing alone, do not create an enforceable duty absent an express contractual obligation. *Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012). Therefore, Plaintiffs' reliance on the University's policies as the basis for liability is unpersuasive and does not constitute grounds for relief.

For all of these reasons, the Court declines to grant the Motion based on the alleged existence of newly discovered evidence.

2.  <u>Alleged Clear Error of Law</u>

Plaintiffs argue that the Court committed clear error by failing to recognize the University's duty of care to Brian Adams. They contend that University policies, as outlined in its Student Handbook and various internal procedures, created a legal obligation to prevent Brian's suicide. Plaintiffs cite decisions from outside the Sixth Circuit, including *Dzung Duy Nguyen v. Massachusetts Inst. of Tech.*, 479 Mass. 436 (Mass. 2018), and *Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602 (W.D. Va. 2002), to argue that universities owe a heightened duty of care to students at risk of self-harm when the institution is aware of prior suicide attempts or mental health crises.

Plaintiffs maintain that the University's internal policies, specifically those issued by the OSCC and UCC, establish a framework for intervention and assistance that was not followed in Brian's case. According to Plaintiffs, the University's failure to conduct in-person welfare checks, provide ongoing mental health evaluations, and coordinate off-campus treatment created a breach of its stated obligations. Plaintiffs further argue that the Court erred in failing to distinguish Brian's case from prior Tennessee precedent, as Brian's known medical history and repeated requests for help should have triggered the University's duty to act.

The University responds that Tennessee law does not impose a duty of care on universities to prevent student suicides. (Response at 30-31). Under Tennessee law, institutions of higher education are not custodians of their students and do not bear a legal responsibility to protect them from self-harm absent a special relationship or statutory duty. *See Bradshaw v. Rawlings*, 612 F.2d 135, 140 (3d Cir. 1979); *Estate of Lance v. Lewisburg Cemetery, Inc.*, 743 S.W.2d 387, 393 (Tenn. Ct. App. 1987).

Additionally, the University argues that Plaintiffs' reliance on non-binding precedent from Massachusetts and Virginia is misplaced. Courts applying Tennessee law have held that duty must be based on established state precedent rather than out-of-circuit decisions. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). The University further asserts that the policies that Plaintiffs cite are general guidelines rather than binding legal commitments and that Plaintiffs' failure-to-intervene theory is not supported by Tennessee case law.

Ultimately, the Court finds no clear error of law in its prior ruling. Plaintiffs' claims rely on policy arguments and non-binding authority rather than controlling Tennessee law. A disagreement with the Court's legal reasoning does not amount to a manifest error of law warranting relief under Rule 59(e).

The dismissal of the case was based on well-established principles under Tennessee law, which do not recognize an affirmative duty for universities to prevent student suicides. Plaintiffs' reliance on cases from other jurisdictions does not override the applicable legal precedent governing this matter. Courts applying Tennessee law have consistently declined to extend a duty of care to universities in similar circumstances.

Given these considerations, the Court concludes that Plaintiffs have not shown any manifest error in the application of law. A motion under Rule 59(e) is not a vehicle for rearguing

matters already decided or for raising arguments that could have been made before judgment was entered. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006). Accordingly, Plaintiffs' Motion on this basis is denied.

      3.    <u>The Interest in Finality</u>

Even assuming Plaintiffs' proposed amendments were not futile, the interest in finality weighs against granting relief. Courts balance the interests of justice with the need for finality when considering post-judgment amendments. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010).

The Court also notes there is no requirement for it to grant leave to amend following its Order. "Although federal courts are inclined to grant leave to amend following a dismissal order, there are circumstances where amendment will not be allowed." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). Plaintiffs did not request leave to amend in the event the Court were to grant the University's Motion to Dismiss (as the Court eventually did), and "a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Id.* at 1042 (citing *Carl Sandburg Village Condominium Ass'n v. First Condominium Dev. Co.*, 758 F.2d 203, 206, n. 1 (7th Cir. 1985)); *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) ("[I]f a party does not file a motion to amend or a proposed amended complaint in the district court, it is not an abuse of discretion for the district court to dismiss the claims with prejudice.") (quoting *CNH Am. LLC v. UAW*, 645 F.3d 785, 795 (6th Cir. 2011)); *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 556 (6th Cir. 2011) ("Plaintiffs having failed to present the issue of amendment, we discern no abuse of discretion in the district court's decision to dismiss their claims with prejudice."); *see also Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 386–87 (6th Cir. 2017).

The Court also notes that repeated failure to cure deficiencies in pleadings militates against granting further leave to amend. *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). Plaintiffs' continued reliance on the University's internal policies does not alter the legal insufficiency of their claims. Allowing amendment now would only delay final resolution without a likelihood of success.

Here, Plaintiffs had opportunity to amend their complaint before judgment was entered. They failed to seek leave to amend during the pendency of the University's Motion to Dismiss, despite having access to the discovery materials they now rely upon. Allowing amendment now would reward procedural neglect and undermine the principles of judicial efficiency. *Pond v. Haas*, 674 F. App'x 466, 470 (6th Cir. 2016) (holding that "allowing post-judgment amendments would sidestep the narrow grounds for obtaining post-judgment relief"). Therefore, Plaintiffs' Motion does not satisfy the requirements for relief, and the Court does not see any other reason to disturb its prior ruling in this matter.

<u>CONCLUSION</u>

It bears repeating that post-judgment relief is an extraordinary remedy reserved for truly exceptional circumstances. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006). Plaintiffs have not demonstrated any extraordinary circumstances that would justify relief. Allowing relief under these circumstances would undermine the finality of judgments and judicial efficiency. *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 529 (6th Cir. 2001).

Because Plaintiffs have not satisfied the requirements for relief under Rule 59(e) or Rule 60(b), the Court declines to grant leave to amend. Plaintiffs' motion (Doc. No. 51) is DENIED.

Plaintiffs will not be granted leave to amend the complaint again, and thus the judgment in this case remains intact and the case is closed.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE